UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――――――――――

JENNIFER COSTA,

                           Plaintiff,                          **COMPLAINT**

VS.

                                                               Civil Action No. 1:14-cv-1570 (GTS/CFH)

CITY OF SCHENECTADY, NEW YORK.

                           Defendant.

―――――――――――――――――――――――――――――――――――――――

        Plaintiff Jennifer Costa, by and through her attorneys D'Orazio Peterson LLP, as and for

her Complaint against Defendant City of Schenectady, New York alleges as follows:

## NATURE OF ACTION

1.  Plaintiff Jennifer Costa ("Plaintiff") brings this action against her employer Defendant

City of Schenectady, New York ("Defendant" or "the City") for discrimination on the basis of

sex, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e, et. seq., and the New York State Human Rights Law ("NYHRL"), New York

Executive Law § 290, et. seq.

## JURISDICTION

2.  This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 2000e-

5 and 28 U.S.C. §§ 1331 and 1367.

## PARTIES

3.  Plaintiff is an individual who maintains a residence in the County of Schenectady, New

York.

4.  Defendant is a municipal corporation located within the State of New York with offices

located at 105 Jay Street, Schenectady, New York 12305.

## VENUE

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in Schenectady County, New York which is located within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND NOTICE OF CLAIM

6.   On May 16, 2014, Plaintiff filed a complaint of discrimination on the basis of sex, sexual harassment and retaliation with the New York State Division of Human Rights ("NYDHR"). This complaint was jointly filed with the EEOC on May 19, 2014.  On October 29, 2014, the NYDHR complaint was dismissed for administrative convenience so that Plaintiff could pursue her claims in federal court.  On December 1, 2014, Plaintiff received a Notice of Right to Sue from the EEOC dated November 26, 2014.

7.   Pursuant to New York General Municipal Law § 50-e, i, on or about May 2, 2014, Plaintiff served a notice of claim on the City of Schenectady notifying it of the basis of Plaintiff's state law claims.  A hearing pursuant to Section 50-h of the General Municipal Law took place on May 28, 2014.

## FACTS

8.   Plaintiff has been employed by the City as a firefighter and paramedic in the Schenectady Fire Department (hereinafter the "Fire Department") since March 2001.

9.   Plaintiff has had a positive performance history in connection with her duties as a firefighter and paramedic and, at all times relevant, was qualified and able to perform the functions of her position and the position of Lieutenant.

10. In addition to her exemplary performance history as a firefighter, Plaintiff has significant teaching and education experience including acting as an instructor at the New York State Academy of Fire Science.

11. Plaintiff has not worked as a firefighter since February 2, 2014 when she was placed on "Chief's leave" (an informal leave of absence) following an incident wherein a drawing of a face with a bullet in its head was placed in her boot at the fire station.

12. As set forth in detail herein, the incident of February 2, 2014 was the culmination of many years of sexual harassment, discrimination and retaliation perpetrated against Plaintiff by the City.

13. During Plaintiff's 14-year tenure with Defendant, upon information and belief, Defendant employed a maximum of four (4) female firefighters.  At the time of Plaintiff's departure from employment, she was one of two (2) female firefighters.

14. During Plaintiff's 14-year tenure with Defendant, Defendant promoted one (1) female firefighter to the position of Lieutenant.  Upon information and belief, this is the only woman to be promoted to the position of Lieutenant in the history of the Fire Department.

15. During Plaintiff's 14-year tenure with Defendant, she took the Civil Service exam at least five (5) times in connection with potentially being promoted to the position of Lieutenant.

16. During Plaintiff's 14-year tenure with Defendant, the only individuals who were promoted to the position of Lieutenant from the same Civil Service list as Plaintiff were men.

17. Throughout her tenure with the City, Plaintiff was consistently passed over for promotion to Lieutenant in favor of less qualified male firefighters with lower seniority; lower scores on the civil service exam; a history of disciplinary issues; and less teaching and education experience as compared to Plaintiff.

18. At all times relevant, Plaintiff is and was qualified for the position of Lieutenant given the fact that she routinely worked out of grade as a Lieutenant and had a positive performance history and additional education and training experience.

19. Upon information and belief, during the period 2006 through 2014, the following male employees who scored lower on the Civil Service exam than Plaintiff were promoted to Lieutenant to the exclusion of Plaintiff: Steven Strazzi (lower on the Civil Service list on more than one occasion); Christopher Keough (also less senior as compared to Plaintiff); Brian Demarest (lower on Civil Service list on more than one occasion); Stephen Helstowski (also less senior); Joel Metz (also no teaching experience as compared to Plaintiff); William Rockenstyre (also less senior); Marc Ciccone; Joshua Canelli (lower on list on more than one occasion and less senior); Paul Bonitatibus, Jr. (also less senior); Adam Levy (also, upon information and belief, history of disciplinary issue); and Kevin Woodrow.

20. Upon information and belief, during the period 2006 through 2014, the following male employees who had less seniority and less relevant experience and training as compared to Plaintiff were promoted to the position of Lieutenant to the exclusion of Plaintiff: Matthew Reinemann, Michael O'Brien, Benjamin Yauchler, Anthony Klouse and Tom Dercole.

21. Upon information and belief, during the period 2006 through 2014, other male firefighters who were less senior than Plaintiff and/or who may have been equally as qualified as Plaintiff were promoted to the position of Lieutenant to the exclusion of Plaintiff.

22. Throughout Plaintiff's tenure with the City, the City never promoted Plaintiff over male individuals who had higher scores than Plaintiff on the civil service list and never promoted Plaintiff over a male employee who may have been equally as qualified. The City did, however, favor and promote male employees when the situation was reversed.

23. Upon information and belief, in addition to the specific instances where the above-named individuals were promoted to Lieutenant, there were other opportunities throughout Plaintiff's 14-year career during which she could have been promoted and she was not.

24. Plaintiff has never been offered a promotion to the position of Lieutenant.

25. The City never promoted Plaintiff to the position of Lieutenant because she is a woman and the City has a pattern, policy and practice of favoring male firefighters over female firefighters for promotions.

26. In addition to its refusal to promote women including Plaintiff, the Fire Department's disdain of female firefighters is illustrated by its lack of preparation for or acknowledgement of the presence of women in the workplace.

27. The Fire Department has no sexual harassment policies, procedures, manuals or training.

28. The Fire Department has no formal policies or procedures for complaints of discrimination or sexual harassment.

29. In her 14-year tenure at the Fire Department, Plaintiff does not recall attending sexual harassment or discrimination training nor does she recall any male firefighters being required to attend such training.

30. The Fire Department does not have separate bunk room, shower or restroom facilities for female firefighters.

31. From the outset of her employment with the City, Plaintiff has been the victim of sexual harassment, sexually charged comments and threats.

32. From the outset of her employment with the City, Plaintiff has had a superior by the name of Lieutenant DS.[1]

33. Throughout Plaintiff's employment with the City, Lt. DS was routinely the highest ranking official in the station with Plaintiff and the individual senior to Plaintiff on the chain of command.

34.  Throughout her employment, at times when Plaintiff was not assigned to the same shift or bid position as Lt. DS, Plaintiff was required to interact with Lt. DS at training sessions and as a result of frequent overtime assignments and shift changes as well as in the ordinary course of crossing paths at the various fire stations.

35. Lt. DS subjected Plaintiff to explicit sexual comments and harassment for many years including through the end of 2013.

36. It was common knowledge at the Fire Department that Lt. DS was romantically interested in Plaintiff when she started her employment and that, when he was rebuffed, he began a campaign of harassment that lasted for the entirety of Plaintiff's career.

37. Lt. DS made routine comments to Plaintiff to the effect that he masturbates while thinking about her including, but not limited to, comments that he masturbated to the point of "stalactites" hanging from the ceiling and that he needs a "shield" when looking at her Facebook page.  Lt. DS also told Plaintiff in front of a group of new firefighters that he was a monkey in a cage "jerking off" and throwing snot at her.

---

[1] In an effort to protect the privacy of the individuals involved in the sexual harassment, discrimination and retaliation alleged herein, for purposes of this complaint only, Plaintiff is identifying these individuals by their rank and initials.  The City has prior notice of the identity of these individuals by virtue of previous filings in the administrative process and pursuant to the General Municipal Law.

38. Lt. DS told Plaintiff, in front of witnesses including the Deputy Chief at Station 1, that Plaintiff's ex-husband wanted to be with her so he could sexually molest her daughters while she is at work.

39. Lt. DS informed Plaintiff that he wanted to perform oral sex on her and subjected her to unwanted touching by pressing himself against her on at least one occasion at Station 3.

40. Lt. DS's comments and inappropriate actions were constant and were made on a routine basis throughout Plaintiff's employment and whenever they came into contact with each other.

41. Lt. DS's comments were made in front of senior individuals to whom Plaintiff would have complained.

42. Lt. DS's comments were made when he was the senior officer to whom Plaintiff would have complained.

43. Lt. DS's comments and inappropriate acts were so pervasive that they created a hostile work environment and contributed to Plaintiff's ultimate constructive discharge.

44. Fellow firefighters including senior officers never intervened despite witnessing Lt. DS's harassment.

45. By virtue of his position in the Fire Department, the actions of Lt. DS are imputed to the City.

46.   In addition to the actions of Lt. DS, Plaintiff was subjected to numerous other instances of sexual harassment throughout the course of her career until her constructive discharge in February 2014.  In addition to creating a hostile work environment, these instances demonstrate the discriminatory animus of the City and its male firefighters to women in the workplace and Plaintiff in particular.

47. Prior to 2008, an article about a course taught by Plaintiff tacked onto a bulletin board in the firehouse was defaced.  Plaintiff complained to her supervisor but nothing was done. Plaintiff then reported the incident to Michelle Wilson, who was a lieutenant at the time.  Lt. Wilson attempted to report this incident up the chain of command but nothing was done.

48. During the course of her employment, Plaintiff underwent a hysterectomy.  In connection with this hysterectomy, Captain TT, Plaintiff's superior, commented to Plaintiff that he heard that her uterus fell out.  Additionally, Captain TT routinely referred to Plaintiff's genitalia as "piss fenders".

49. On or about September 25, 2011, Plaintiff received a death threat in the form of a drawing of a face with a bullet in its head on her locker at Station No. 4.  Plaintiff made an unusual incident report and complained to Chief RS, who was a deputy chief at the time.  (This incident is hereinafter referred to as "the first death threat.")

50. Chief RS told Plaintiff "boys will be boys" and "don't let these guys [referring to male firefighters] get to you".  Nothing came of the investigation and Plaintiff's difficulties at work continued.

51. Soon after Plaintiff received the death threat and complained, she was denied promotions to lieutenant in favor of less qualified male employees.

52. In or about 2012, while on duty at the firehouse, another supervisor of Plaintiff's, Lieutenant GC, told Plaintiff that he was going to call a friend of his to come to the firehouse for a sexual encounter with Plaintiff.  Lt. GC proceeded to allow this individual into the firehouse while in possession of an alcoholic beverage, whereupon this individual propositioned Plaintiff and followed Plaintiff into another room when she attempted to escape his advances causing her to feel threatened and violated.

53. At or about the end of January 2014, Plaintiff was brought into a bunkroom at the firehouse by three male supervisors, Deputy Chief VK, Lieutenant GB and Lieutenant MA, and accused of making a sexual harassment complaint against Lt. DS on behalf of another female firefighter.  (This incident is hereinafter referred to as "the bunkroom incident").

54. These individuals did not call Plaintiff in to an appropriate office for a formal meeting and did not provide her with union representation, but rather intimidated her by bringing her into a bunkroom where she was outnumbered by three (3) men.  Plaintiff was never advised of the outcome or circumstances of this alleged sexual harassment complaint.

55. When Plaintiff complained during the bunkroom incident that the supervisors never made an effort to investigate her prior death threat, Deputy Chief VK responded "what do you expect? The guys [male firefighters] had to up the ante."

56. Deputy Chief VK's comment verbalized what the facts in this case demonstrate – that Defendant and its agents, employees and superior officers did not want female firefighters in the workplace and were attempting to drive Plaintiff out.

57. Upon information and belief, Deputy Chief VK was a decision maker with respect to the terms and conditions of Plaintiff's employment including whether to promote Plaintiff to the position of Lieutenant.

58. Following the bunkroom incident, Plaintiff complained to Lt. MA about the circumstances of the meeting.  Nothing was done.

59. Within one (1) week of the bunkroom incident and Plaintiff's complaints, Plaintiff was again passed over for a promotion to Lieutenant.  The City promoted Matthew Reinemann, upon information and belief, an employee less senior than Plaintiff and with no teaching experience as compared to Plaintiff.   Soon thereafter, Plaintiff was passed over for a promotion in favor of

Joshua Canelli, upon information and belief, an employee less senior than Plaintiff with no additional education or training experience and who had never worked out of grade as a lieutenant.   Mr. Canelli was also lower on the Civil Service list than Plaintiff at this time, and had been lower on the list in the past.

60. At the time of these promotions, Plaintiff was second on the Civil Service list for a promotion.  Although Mr. Reinemann was first on the list, in the past, the City promoted male employees who were lower than Plaintiff on the list.   The City never, however, promoted Plaintiff over male employees who were higher than her on the list.

61. On or about February 2, 2014, Plaintiff received another death threat in the form of a picture of a face with a bullet in its head stuck into her boot.  The death threat was very similar in appearance to the first death threat.  In light of the fact that the firehouse is not accessible to the public and the similarities in appearance to the first threat which supervisors acknowledged was made by a male firefighter(s), it was obvious that the death threat was made by another firefighter.  (This incident is hereinafter referred to as the "second death threat".)

62. Plaintiff immediately reported the death threat to her supervisor on duty, Lt. DS.  Lt. DS told her he could not do anything for her and that he did not want to be alone in the room with her.  In addition to the fact that Lt. DS had harassed Plaintiff for her entire career, Lt. DS did not want to be in the room with Plaintiff and failed to assist her in any way because she had been questioned about a sexual harassment complaint allegedly made against him.

63. Plaintiff reported the death threat to a Captain once he arrived at the station and then to the police.

64. On or about February 2, 2014, Plaintiff was placed on "Chief's leave", which is essentially an informal, involuntary leave of absence.

65. The following day, Plaintiff was ordered to appear at Ellis Hospital for a "fitness for duty" evaluation despite the fact that she had already had her physical for the year.  Upon information and belief, the City had informed Ellis Hospital that it was concerned Plaintiff was a threat to herself or others despite having no foundation or reasonable basis for this belief.

66. At the time it placed Plaintiff on Chief's leave and ordered her to an evaluation, Defendant had merely observed that Plaintiff was understandably upset after she received the death threat in her boot.

67. Plaintiff was placed on Chief's leave and ordered to attend a fitness for duty evaluation prior to providing Defendant with any correspondence from her own medical providers.

68. By placing Plaintiff on Chief's leave and ordering her for a fitness for duty evaluation after merely observing that Plaintiff was upset, Defendant treated Plaintiff differently because she is a woman.  Defendant does not put men on leave when they become upset at work and does not order men for fitness for duty evaluations for becoming upset on an isolated occasion.

69. Following Plaintiff's placement on Chief's leave, Chief RS instructed Plaintiff not to enter any firehouse.  Plaintiff's subsequent attempts to reach Chief RS by telephone in order to discuss her employment were unsuccessful and her telephone messages were not returned.

70. Following her placement on Chief's Leave and the order to undergo a fitness for duty evaluation, at the evaluation on or about February 7, 2014, Plaintiff provided medical documentation to Ellis Hospital to the effect that she was unable to return to work due to the psychological distress resulting from the second death threat and the years' of harassment and discrimination she suffered at the hands of the City.

71. Upon information and belief, Ellis Hospital subsequently, but not sooner than February 13, 2014, provided this information to the City.

11

72. Plaintiff has never been asked to return to work; has never been promoted to the position of Lieutenant; and has never otherwise been contacted by the City in order to facilitate a return to work.

73. Plaintiff remains out of work as a result of the intolerable working conditions created by the City and the severe psychological injuries she suffered after enduring years' of sexual harassment, discrimination and threats and, therefore, has been constructively discharged.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**

74. Plaintiff repeats and realleges each of the preceding paragraphs as if more fully set forth herein.

75. Defendant's actions as set forth herein constitute unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964.

76. Throughout her tenure with the City, Plaintiff was consistently passed over for promotion to Lieutenant in favor of male candidates.

77. Plaintiff was routinely passed over for promotion to Lieutenant in favor of less qualified and less senior male candidates.

78. To the extent that the City had discretion to appoint individuals for promotion who were not at the top of the Civil Service list, the City never exercised this discretion in favor of Plaintiff and only in favor of male employees.

79. The City has made no acknowledgement of or preparation for the presence of female employees in the Fire Department.

80. The City does not provide separate sleeping, showering or restroom facilities to female employees.

81. The Fire Department has no sexual harassment policies, training or formal avenues of complaint for sexual harassment or discrimination.

82. The Fire Department ignored and condoned the blatant sexually explicit comments made to Plaintiff by individuals such as Lt. DS and Captain TT.

83. Superior officers in the Fire Department participated in the sexual harassment and intimidation of Plaintiff including but not limited to the harassment by Lt. DS; the bunkroom incident; and the incident wherein Lt. GC invited a friend to the firehouse to meet Plaintiff.

84. The Fire Department failed to take Plaintiff's complaints seriously including when an article about her was defaced and both death threat incidents.

85. The Fire Department had a disproportionate reaction to Plaintiff being upset about the second death threat because she is a woman.  The Fire Department does not order men who get upset in the workplace for fitness for duty evaluations and does not place such men on leave.

86. The City has a pattern, policy and practice of discrimination against female employees in the Fire Department including Plaintiff.

87. Upon information and belief, in addition to Plaintiff, at least two other female firefighters have been the victims of extreme sexual harassment at the Fire Department.

88. Upon information and belief, only one (1) female firefighter has been promoted to lieutenant in the history of the Schenectady Fire Department.

89. The City has permitted this culture of discrimination, harassment and intimidation to exist within the Fire Department for many years.

90. The City has discriminated against Plaintiff on the basis of her sex by failing to promote her pursuant to a pattern, policy and practice of favoring male employees for promotions; by ignoring and condoning sexual harassment against Plaintiff as set forth above; by participating in

sexual harassment against Plaintiff through its superior officers as set forth above; by failing to have appropriate practices and procedures in place to prevent and address sexual harassment or to acknowledge the presence of women in the workplace; by permitting and cultivating a culture of harassment, discrimination and intimidation against female firefighters; by placing Plaintiff on Chief's leave and ordering her for a fitness for duty evaluation; and by causing Plaintiff's constructive discharge.

91. The City's actions constitute a continuing violation of Title VII.

92. By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost increased pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Sexual Harassment and Hostile Work Environment in Violation of Title VII)

93. Plaintiff repeats and realleges each of the preceding paragraphs as if more fully set forth herein.

94. The City's actions, and the actions of its agents, employees and superior officers, as set forth above were so severe and pervasive that they altered the terms and conditions of Plaintiff's employment ultimately resulting in her constructive discharge.

95. The City's actions, and the actions of its agents, employees and superior officers, as set forth above created a workplace that was permeated with hostility, ridicule and insult against female employees and Plaintiff in particular.

96. Plaintiff was continually publicly humiliated by the sexually explicit comments made to her throughout her career, which has caused continuing and serious emotional and psychological effects and which ultimately caused her constructive discharge.

97. Plaintiff was placed in fear of physical harm as a result of the two death threat incidents at the hands of male firefighters. Because of Defendant's lack of serious response to the first death threat incident, Plaintiff was forced to work in fear of physical harm from the date of that threat until the date of her constructive discharge.

98. Plaintiff suffered other incidents of physical intimidation including by Lt. GC as set forth above; during the bunkroom incident; and unwanted touching by Lt. DS.

99. Lt. DS subjected Plaintiff to several years' of sexually explicit comments and ridicule throughout the end of 2013 which Plaintiff endured without any supervisory intervention despite City employees and superiors witnessing and having notice of the harassment.

100.     The City treated Plaintiff differently than male employees when it placed her on Chief's leave and ordered her for a fitness for duty evaluation after observing that she was upset following the second death threat incident.

101.     The City's "blame the victim" reaction to Plaintiff's response to the second death threat illustrates its hostility towards female employees in the Fire Department.

102.     The City's actions, and the actions of its agents, employees and superior officers, as set forth above, are part of one hostile work environment which culminated in Plaintiff's constructive discharge in February 2014.

103.     At all times relevant, the City failed to have adequate avenues of complaint for firefighters like Plaintiff to formally complain of sexual harassment or discrimination in the workplace.

104.     Even if the Fire Department had available avenues of complaint, which it did not, it failed to train its employees with respect to complaints of sexual harassment or discrimination.

105.     At all times relevant, the Fire Department did not have a designated sexual harassment or discrimination officer.

106.     At all times relevant, the Fire Department did not have sexual harassment manuals or policies.

107.     Even if the Fire Department had sexual harassment manuals or policies, which it did not, the Fire Department failed to train its employees with respect to such policies as well as with respect to legal and acceptable behavior in the workplace.

108.     At all times relevant, the Fire Department failed to respond to complaints of harassment by Plaintiff and other female employees and failed to intervene to prevent or oppose harassment which was witnessed by senior officers to whom complaints would be made.

109.     Even if the Fire Department had available avenues of complaint, which it did not, Plaintiff was harassed by superior officers including Lt. DS, Lt. GC, Captain TT and the individuals involved in the bunkroom incident – all supervisors to whom a complaint would have been made.

110.     At all times relevant, the City's agents, employees and superior officers witnessed harassment and discrimination against Plaintiff and other female employees and failed to intervene or otherwise act.

111.     Upon information and belief, at least two (2) other female employees were subjected to extreme sexual harassment at the Fire Department.

112.     Upon information and belief, if female firefighters were willing to have romantic relationships with superiors or fellow firefighters they may have been protected from the type of

harassment suffered by Plaintiff.  Plaintiff never had a romantic relationship with a superior or fellow firefighter.

113.    The actions and failures of the City and its agents, employees and superior officers created a hostile work environment and intolerable working conditions which culminated in Plaintiff's constructive discharge in February 2014.

114.    By virtue of their positions in the Fire Department, the actions of Lt. DS, Lt. GC, the individuals involved in the bunkroom incident and Captain TT are imputed to the City.

115.    By virtue of its abject failure to have sufficient complaint procedures in place, its lack of anti-discrimination and harassment policies, its lack of training of employees and the failure of senior officials to intervene, the City is liable for the harassment perpetrated against Plaintiff by its employees.

116.    Defendant's actions and failures constitute a continuing violation of Title VII.

117.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost increased pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**

118.    Plaintiff repeats and realleges each of the preceding paragraphs as if more fully set forth herein.

119.     Plaintiff engaged in protected activity when she made a complaint regarding the first death threat.

120.     Following this complaint, Plaintiff was denied promotions to lieutenant.

121.     In or about the end of January 2014, Plaintiff engaged in protected activity when she was questioned about a complaint of sexual harassment (i.e., the bunkroom incident).

122.     In or about the end of January 2014, Plaintiff engaged in protected activity when she complained to Deputy Chief VK that nothing was ever done about the first death threat.

123.     In or about the end of January 2014, Plaintiff engaged in protected activity when she complained to Lt. MA about the circumstances of the bunkroom incident.

124.     Upon information and belief, Deputy Chief VK, who was involved in the bunkroom incident and was an individual to whom Plaintiff complained, was a decision maker with respect to Plaintiff's potential promotion to Lieutenant.

125.     Plaintiff swiftly thereafter received the second death threat on February 2, 2014.

126.     On February 2, 2014, Plaintiff engaged in protected activity when she complained about the second death threat.

127.     Plaintiff complained about the second death threat to, among others, Chief RS.

128.     Upon information and belief, Chief RS was a decision maker with respect to Plaintiff's potential promotion to Lieutenant.

129.     Plaintiff was thereafter placed on Chief's leave and ordered for a fitness for duty evaluation for complaining about the second death threat and for communicating that she was upset about the second death threat.

130.     When Plaintiff complained about the second death threat, she first complained to Lt. DS who refused to help Plaintiff.

131.    Lt. DS refused to help Plaintiff because she had been accused of making a sexual harassment complaint against him and because she participated in an investigation of such alleged complaint.

132.    Lt. DS refused to help Plaintiff in retaliation for her participation in an investigation of sexual harassment.

133.    Following Plaintiff's protected activity as set forth herein, Plaintiff was denied promotions to Lieutenant in favor of Matthew Reinemann and Joshua Canelli.

134.    The second death threat, the denials of promotions and Plaintiff's placement on Chief's leave and being ordered for a fitness for duty evaluation constitute illegal retaliation under Title VII and caused Plaintiff's constructive discharge.

135.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYHRL)

136.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

137.    The City's actions as set forth above constitute discrimination on the basis of sex in violation of the New York State Human Rights Law ("NYHRL").

138.     The City's actions as set forth above constitute a continuing violation of the NYHRL.

139.     The City's actions as set forth above resulted in Plaintiff's constructive discharge in February 2014.

140.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost increased pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Sexual Harassment and Hostile Work Environment in Violation of the NYHRL)

141.     Plaintiff repeats and realleges each of the foregoing paragraphs as if more fully set forth herein.

142.     The actions of Defendant created a work environment that was permeated with insult, ridicule and hostility to female employees including Plaintiff.

143.     The actions of Defendant were so severe and pervasive that they altered the terms and conditions of Plaintiff's employment and resulted in her constructive discharge in February 2014.

144.     The actions of Defendant were continuing and part of one hostile work environment that spanned many years.

145.     Plaintiff endured many years of sexually explicit comments and physical intimidation and threats without any supervisory intervention despite the City's witnessing such harassment and the common knowledge of such harassment.

146.     The Fire Department failed to have adequate complaint procedures, training or policies and manuals to prevent or address the harassment suffered by Plaintiff.

147.     The Fire Department failed to adequately act on complaints of harassment by Plaintiff and other female firefighters.

148.     Plaintiff was harassed by supervisors to whom she would have complained.

149.     The hostile work environment created by Defendant resulted in Plaintiff's constructive discharge and constitutes a continuing violation of the NYHRL.

150.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost increased pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYHRL)

151.     Plaintiff repeats and reallages each of the foregoing paragraphs as if more fully set forth herein.

152.     Plaintiff engaged in protected activity when she made complaints of threats and harassment and participated in an investigation of sexual harassment.

153.     Defendant retaliated against Plaintiff for engaging in protected activity when it denied her promotions; refused to respond to her complaints; made the second death threat; placed her on Chief's leave; ordered her for a fitness for duty evaluation; and caused her constructive discharge.

154.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost accrued sick and vacation time, lost overtime, lost increased pay for working out of grade, lost pay for not being promoted to lieutenant, lost benefits including retirement contributions and health benefits, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation.

### **JURY DEMAND**

155.     Plaintiff hereby demands a trial by jury.


**WHEREFORE**, Plaintiff demands Judgment against Defendant as follows;

(A) Declaring that Defendant's actions are in violation of the Title VII and the NYHRL and enjoining Defendant from future violations thereof; and

(B) On the first cause of action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(C) On the second cause of action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(D) On the third cause of action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(E) On the fourth cause of action, monetary damages in an amount to be determined at trial; and

(F) On the fifth cause of action, monetary damages in an amount to be determined at trial; and

(G) On the sixth cause of action, monetary damages in an amount to be determined at trial; together with

(H) Such other legal and equitable relief as the Court deems appropriate under the circumstances and which is available by law or statute.


Dated: December 26, 2014
         Saratoga Springs, New York

                                        D'ORAZIO PETERSON LLP

                                  By: /s/ *Giovanna A. D'Orazio*
                                        Giovanna A. D'Orazio
                                        Bar Roll #515574
                                        Scott M. Peterson, Esq.
                                        Bar Roll #513186
                                        125 High Rock Avenue
                                        Saratoga Springs, NY 12866
                                        (tel) 518-308-8339
                                        (fax) 518-633-5106
                                        (email) gad@doraziopeterson.com
                                             smp@doraziopeterson.com